UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


WIELENE BROWN                          CIVIL ACTION


VERSUS                                 NO: 05-3982


TANGIPAHOA PARISH SCHOOL               SECTION: "R"(2)
SYSTEM ET AL


<u>**ORDER AND REASONS**</u>

Before the Court is defendants' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  For the following reasons, the Court GRANTS the defendants' motion.


**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Wielene Brown, an African-American woman, is an employee of the Tangipahoa Parish School System.  Since she was first hired in 1982, Brown mostly has held teaching positions in the school district.  This lawsuit stems from her attempts to move into an administrative position.  Brown alleges that since she received the necessary certification to be an administrator in 1994, she has applied for and not received several administrative positions within the school district because of

discriminatory hiring practices.

On September 28, 2001, Brown filed a complaint against the Tangipahoa Parish School Board with the United States Equal Employment Opportunity Commission alleging discrimination on the basis of her race, gender, and age under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. In her charge of discrimination to the EEOC, Brown claims that she was not promoted to either principal or assistant principal at Hammond Eastside Upper Elementary School during the summer of 2001 because of her age, race, and sex. On January 30, 2002, the EEOC determined that no information obtained could establish a violation of the statutes, and issued a notice of suit rights. Brown did not file a suit in state or federal court on these allegations.

On August 18, 2005, Brown filed this suit under 42 U.S.C. §§ 1981 and 1983 against the school district and Bruce Bankston, the principal of Hammond Eastside Upper from 2001 to 2005, alleging that she had been discriminated against on account of her race. Brown asserts that white candidates in the school district had been provided more promotional opportunities, even though she had equal or in some cases better credentials than those white candidates. Brown also claims that, since she filed the EEOC complaint, she was denied employment opportunities on equal terms

2

and conditions with those of whites similarly situated.  Brown
further alleges that she was demoted from her administrative
position to a physical education instructor at Hammond Eastside
Upper following the 2004-05 school year as punishment for
complaining to Superintendent Louis Joseph about how she was
being treated because of the manner in which she disciplined
African-American children as opposed to white children.  Brown
seeks compensatory and punitive damages, as well as reasonable
attorney's fees and costs.  Defendants now move for summary
judgment on all of plaintiff's racial discrimination and
retaliation claims.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there are no genuine
issues as to any material facts, and the moving party is entitled
to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c);
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court
must be satisfied that no reasonable trier of fact could find for
the nonmoving party or, in other words, "that the evidence
favoring the nonmoving party is insufficient to enable a
reasonable jury to return a verdict in her favor." *Lavespere v.
Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.
1990) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

3

(1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial.  *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).


**III. DISCUSSION**

**A.   Applicable Standard**

Plaintiff's race discrimination and retaliation claims against defendants are brought under 42 U.S.C. § 1981, which provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ."  *Id.*  The Fifth Circuit has stated that race discrimination and retaliation claims in the

4

employment context under Section 1981 are analyzed in the same manner as a claim for race discrimination under Title VII of the 1964 Civil Rights Act, with the exception of their respective statutes of limitation and the requirement under Title VII that the plaintiff exhaust all administrative remedies. *See Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). A Title VII plaintiff can use either direct or circumstantial evidence to prove a case of intentional discrimination. *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994). The Fifth Circuit has noted that direct evidence is rare in cases such as this one. *See id.* "Direct evidence is evidence which, if believed, proves the fact of [intentional discrimination] without inference or presumption." *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). The Fifth Circuit has defined "direct evidence" as including "any statement or written document showing a discriminatory motive on its face." *Portis*, 34 F.3d at 329 (citing *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990). The Court concludes that plaintiff has not submitted any facts that provide direct evidence of defendants' alleged race discrimination and retaliation.

Thus, under the framework set forth in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802 (1973), plaintiff here must use circumstantial evidence to satisfy her initial burden of proving a *prima facie* case of discrimination and retaliation by a preponderance of the evidence.  Plaintiff can establish a *prima facie* case in the discrimination context once she has proved that she: (1) is a member of a protected class; (2) was qualified and applied for the position; (3) was rejected for the job; and (4) the employer continued to seek applicants with plaintiff's qualifications.  *See Adams v. Reed*, 567 F.2d 1283, 1285 (5th Cir. 1978).  Alternatively, plaintiff can establish a *prima facie* case once she has proved that she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class or, in the case of a demotion, the job remained open and applications were accepted.  *See Evans v. City of Houston*, 246 F.3d 344, 350 (5th Cir. 2001); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).  As for retaliation claims, a plaintiff can prove a *prima facie* case if she shows: (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action.  *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).

If the Court finds that plaintiff is successful in establishing a *prima facie* case of discrimination or retaliation, then the burden shifts to the defendants to produce a legitimate, nondiscriminatory reason for their employment actions. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). If the defendants articulate such a justification, then the inference created by the plaintiff's *prima facie* case "drops out of the picture" and the Court must "decide the ultimate question: whether [the] plaintiff has proved [intentional discrimination]." *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511-12 (1993). In doing so, the Court can take into consideration any evidence presented by plaintiff demonstrating that defendants' explanation for their actions were a pretext for discrimination or retaliation. *See Evans*, 246 F.3d at 350 (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000)). "Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148.

**B.   Discrimination Claims**

In her complaint, Wielene Brown alleges that: (1) she was discriminated against in terms and conditions of promotion because of her race in that she has not been treated as similarly

situated white persons when applying for positions as principal
or assistant principal; and (2) she was denied the privileges and
benefits of her employment contract and relationship with the
Tangipahoa Parish School System by the conduct of defendants
Bruce Bankston and school system personnel.  The Court addresses
each of plaintiff's claims in turn.

### 1.  *Failure to promote*

As an initial matter, although Section 1981 contains no
statute of limitations, the Supreme Court instructs courts to
apply a limitations period that is applicable to similar claims
under state law.  *Del. State Coll. v. Ricks*, 449 U.S. 250, 255 n.
5 (1980).  For Section 1981 claims in Louisiana alleging a
failure to promote, the Fifth Circuit applies Louisiana's one-
year tort prescriptive period.  *Johnson v. Crown Enterprises,
Inc.*, 398 F.3d 339, 341-42 (5th Cir. 2005) (distinguishing the
recent holding in *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369
(2004), mandating a four-year limitations period for Section 1981
claims, as only applying to conduct that occurs after contract
formation, not for claims arising from the failure to enter into
a new contract).  Because plaintiff filed her lawsuit on August
18, 2005, she concedes that her cause of action as it relates to
discrimination in the defendants' promotion practices is limited
to conduct that occurred on or after August 18, 2004.  *See Nat'l*

8

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (holding in Title VII claims that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened'").

In defendants' motion for summary judgment, they compile a list of each of the principal and assistant principal positions that were available in the Tangipahoa School System from August 18, 2004 to August 18, 2005 when plaintiff filed her lawsuit. (R. Doc. 50-3, at 7).  According to defendants, there were three such positions available: principal at Woodland Park Early Learning Center (5/25/05); assistant principal at Hammond Westside Primary (6/20/05); and principal at Hammond Westside Upper (7/1/05).[1]  For each position, the school system selected another black candidate.[2]  (*Id.*).  Plaintiff presents no evidence in her opposition brief that contradicts these facts.  In fact, plaintiff concedes that none of the positions for which she applied during the relevant time period went to a white candidate.  (R. Doc. 67-2, at 2).  The Fifth Circuit has held that when a position for which a black plaintiff has sought

---

[1] Plaintiff's complaint cites to just two open positions that she applied for during the relevant time period.  (R. Doc. 1, at ¶ 16).

[2] According to defendants, Woodland Park Early Learning Center hired Carolyn Roman, Hammond Westside Primary hired Wanda Davis, and Hammond Westside Upper hired Alexa Hookfin.

promotion instead goes to another black candidate, the plaintiff
cannot prove a *prima facie* case of race discrimination.
*Jefferies v. Harris County Cmty. Action Ass'n*, 615 F.2d 1025,
1030 (5th Cir. 1980).  As such, no genuine issue of fact exists
as to this claim, and plaintiff is unable to prevail as a matter
of law.

> 2.   *Denial of privileges and benefits of her*
>      *employment contract*

Plaintiff next alleges that she was denied the privileges
and benefits of her employment contract with the school system by
the acts of defendants.  As noted above, under *Jones v. R.R.*
*Donnelly & Sons Co.*, claims under Section 1981 for conduct, such
as harassment or termination, that occurs after contract
formation have a four-year limitations period.  541 U.S. at 381.
Plaintiff however limits her post-contract claims to actions that
took place during the 2004-05 academic school year, when
plaintiff worked at Hammond Eastside Upper School.  At that time,
defendant Bruce Bankston served as principal of Hammond Eastside
Upper.  Plaintiff asserts in her complaint that, for the 2004-05
school year, she served as "principal assistant," in charge of
administering and coordinating disciplinary actions at Hammond
Eastside Upper.  (R. Doc. 1, at ¶¶ 13, 28).  In that role, she
contends that she primarily was responsible for disciplining

black students because white teachers referred disciplinary
matters involving black students to plaintiff, while they handled
the discipline of white students themselves.  (*Id.*, at ¶¶ 29-31).
Plaintiff asserts that during the school year, the white teachers
complained about the manner in which plaintiff disciplined the
black students, and as a result, Bankston permitted the teachers,
primarily white, to re-write the school's discipline policy.
(*Id.*, at ¶¶ 32-34).  At the end of the school year, plaintiff
argues that she was demoted to the position of physical education
instructor because of the manner in which she handled
disciplinary matters and was denied the opportunity to be an
assistant principal for the 2005-06 school year.  (*Id.*, at ¶¶ 36,
40-41).

Defendants now move for summary judgment on all of
plaintiff's claims arising from her work during the 2004-05
school year.  Defendants contend that there is an absence of
factual support for plaintiff's discrimination claims because
neither Bankston nor anyone else in the school system
discriminated against plaintiff on account of her race in any
employment action taken within the timeframe of this lawsuit.[3]

_____

[3] It should be noted that plaintiff has presented no
evidence, and in fact no longer even argues, that any other white
administrator with the Tangipahoa Parish School System
discriminated against her during the course of the 2004-05 school

11

Before the Court can decide whether plaintiff has presented sufficient evidence such that plaintiff could conceivably prove discrimination against defendants, it must first determine the specific employment actions that gave rise to this action.  From the plaintiff's complaint and her opposition to this summary judgment motion, it appears plaintiff is asserting that she was discriminated against by the following actions: she was not treated like an assistant principal; she was not paid like an assistant principal; and she was demoted from her position in charge of disciplinary matters at the end of the school year. The Court now addresses each alleged action in turn.

First, plaintiff asserts in her opposition brief that she was promoted to the assistant principal position prior to the 2004-05 school year, and yet she was denied the various privileges and benefits of the assistant principal position because she was considered by the school to be an administrative assistant.  (R. Doc. 67, at 7, 10).  Her claim is not actionable. Quite simply, plaintiff was not an assistant principal at any time during the 2004-05 school year.  Rather, she was an administrative assistant.  The evidence is clear in this regard. First, before any open assistant principal position can be filled

_____

year.

in Tangipahoa Parish, it must be advertised in the newspaper for ten working days.  (R. Doc. 50-7, at 14, 16).  Then, interested candidates apply for the position, and are scored based on several criteria, which were mandated by an order of the Eastern District of Louisiana almost forty years ago in the *Moore v. Tangipahoa Parish School Board* litigation.  After the scoring is completed, the three highest-scoring candidates are forwarded to the superintendent of the school system, who then selects the person of his choice amongst the three.  (R. Doc. 50-8, at 48).  The hiring of principals and assistant principals is therefore a highly formalized process in Tangipahoa Parish.  While it is undisputed that Evelyn Showers, who had been assistant principal at Hammond Eastside Upper in charge of discipline, had taken a leave of absence before the start of the 2004-05 school year, plaintiff has provided no evidence that Showers' assistant principal position was ever vacated and made available to interested applicants.  Plaintiff does not offer any facts that indicate she ever went through the mandatory application, scoring, and selection process to become an assistant principal for the 2004-05 school year.

Furthermore, official school documents conclusively demonstrate that plaintiff was not an assistant principal.  For example, the roster of Hammond Eastside Upper's faculty and staff

clearly lists plaintiff as an administrative assistant. (R. Doc. 68, Ex. H). Even plaintiff's own exhibit, which purports to list the assistant principals in the school system for the 2004-05 system, shows "AA" next to plaintiff's name, presumably standing for administrative assistant.[4] (Defendant's Ex. M). Additionally, plaintiff signed a teacher contract with the school system for the 2004-05 school year, and has provided no evidence to suggest that she ever sought to change or did change its terms to reflect her supposedly new assistant principal position. (R. Doc. 68, Ex. I). Finally, the Court notes again that throughout her complaint, plaintiff refers to her position during the 2004-05 school year as "principal assistant." She equates her position during that timeframe with that of Johanna Vogelsanger, who was clearly an administrative assistant (yet plaintiff refers to her as a principal assistant in her complaint). (R. Doc. 1, at ¶ 23).

Against this mountain of evidence, plaintiff only raises her own bald assertion that Bankston asked her before the start of the school year to become an assistant principal in charge of discipline. (Defendant's Ex. A, at 85; Defendant's Ex. H).

---

[4] The Court notes that the other staff member from Hammond Eastside Upper on plaintiff's exhibit is Johanna Vogelsanger, who was an administrative assistant. (R. Doc. 68, Ex. B, at 28-30; R. Doc. 68, Ex. H).

Bankston, however, rejects that he ever told plaintiff that she was anything other than an administrative assistant, stating in his deposition: "She knew that she was an administrative assistant.  I told her that she was an administrative assistant." (R. Doc. 68, Ex. B, at 28).  Even if this jot of evidence would be considered in the summary judgment equation in the ordinary case, that is not the situation here.  This follows because plaintiff's claim is foreclosed for additional reasons.

She raises her allegation that she was an assistant principal for the first time in her opposition to summary judgment.  Nowhere in her complaint does she assert that she was actually an assistant principal during the 2004-05 school year.  Nor does plaintiff plead that she was discriminated against during the school year because she was considered by the school system to be performing a different job than the one she was actually doing.  It is well established that a plaintiff may not raise an entirely new claim, in essence seeking to amend her pleading, in an opposition memorandum to a summary judgment motion.  *See, e.g., Parish v. Frazier*, 195 F.3d 761, 763-64 (5th Cir. 1999); *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (*aff'd on this point en banc*, 37 F.3d 1069, 1073 & n.8 (5th Cir. 1994) (en banc)).  This is certainly not a situation in which plaintiff's claim developed during the course of discovery,

15

as plaintiff knew or should have known what her position was when she filed her action.  In fact, the original theory of her case as detailed in her complaint was predicated on the notion that she was a principal assistant, but wanted to be an assistant principal.  Plaintiff cannot now contradict her own pleading to defeat a summary judgment motion, nor can she pull a bait-and-switch on the underlying facts of her claim, especially when they were exclusively within her control.  Thus, her new claim based on alleged discrimination in her purported role as an assistant principal is dismissed.

As for plaintiff's second alleged discriminatory action, the Court will not consider her assertion that she was discriminated against because she was not paid like an assistant principal. Not only was she not an assistant principal, plaintiff failed to raise this claim in her original complaint.  Doing so now through an opposition to a summary judgment motion is improper, for the reasons just discussed.

Finally, plaintiff fails to raise sufficient facts to indicate she could make out a *prima facie* case of race discrimination in her alleged demotion from administrative assistant to physical education instructor at the end of the 2004-05 school year.  First, under *Evans*, plaintiff cannot prove a *prima facie* case of race discrimination because she cannot show

16

that after her demotion, the position remained open and the school accepted applications.  246 F.3d at 350.  As plaintiff states in her deposition, Bankston did not hire anyone, nor did he seek to hire anyone, to assume the disciplinary duties for the 2005-06 school year.  (R. Doc. 50-3, at 89-90).  Instead, Bankston decided at the conclusion of the 2004-05 school year to take over the discipline responsibilities himself for the following school year.  As he states in his deposition, "I told [plaintiff] that I was going to not replace the administrative assistant position, nor was I going to get an assistant principal, that I was going to handle the discipline."  (R. Doc. 50-13, at 43).

Second, it is undisputed that, during the 2004-05 school year, the faculty became increasingly upset with the manner in which plaintiff was handling her disciplinary responsibilities.  (R. Doc. 67-2, at ¶ 22).  Bankston knew about the problems that existed between the teachers and plaintiff, and spoke to plaintiff on several occasions about the situation.  (R. Doc. 50-13, at 30-32).  Eventually, Bankston decided that the best solution to the tensions between the teachers and plaintiff was for him to assume her discipline duties.  (*Id.* at 42).  Plaintiff does not refute Bankston's testimony.  In fact, plaintiff does not raise any facts in her opposition brief that create an

17

inference that Bankston himself was motivated by racial animus in deciding to remove plaintiff's disciplinary duties for the 2005-06 school year.  Rather, plaintiff seemingly contends that white teachers were upset with the manner in which plaintiff handled discipline and that they were the ones motivated by racial animus in seeking plaintiff's removal.  However, even accepting that there is a genuine issue of fact on this point, plaintiff still does not provide any evidence whatsoever that indicates the teachers' motivations could somehow be ascribed to Bankston, who plaintiff concedes was the only person responsible for deciding whether to extend her term as an administrative assistant.  (R. Doc. 67-2, at ¶ 24).  Plaintiff attempts to analogize the facts in this case to those in *Edwards v. Gladwater Independent School District*, 572 F.2d 496 (5th Cir. 1978), in which the Court found that an inference could be drawn that the school's action was impermissibly motivated by race.  However, in that case, the facts clearly suggested that the school's proffered reasons for not renewing the contract of a black teacher were pretextual. *Id.* at 498.  Plaintiff here offers nothing in the way of facts to rebut Bankston's race-neutral rationale for assuming the disciplinary duties himself after the 2004-05 school year – to improve the strained relations between teachers and the administration on disciplinary issues that both sides agree arose

18

during plaintiff's tenure.  Thus, plaintiff's conclusory assertion that Bankston demoted her because of her race is not sufficient to defeat summary judgment on her claim of race discrimination.

**C.   Retaliation Claims**

Plaintiff's retaliation claims are another example of the fugitive nature of plaintiff's allegations.  In her complaint, plaintiff sets forth only one retaliation claim – that because she complained to Superintendent Louis Joseph about how she was being treated as a result of her disciplinary decisions regarding black children, she was demoted to the position of physical education instructor.  Plaintiff provides no facts in her opposition to this summary judgment motion that support such a claim.  Furthermore, it is undisputed that Joseph had no role in plaintiff's move from administrative assistant to physical education teacher.  Bankston states in his deposition that he was the only person charged with the responsibility of removing plaintiff as administrative assistant.  (R. Doc. 50-13, at 52). Plaintiff offers no evidence to suggest otherwise.

Now, plaintiff's retaliation claim, as described in her opposition to this summary judgment motion, has morphed into an assertion that she was retaliated against for challenging the manner in which the discipline of black students was being

handled at Hammond Eastside Upper.  Because of her complaints,
she alleges that "she was retaliated against in her quest for the
principal position after Bruce Bankston" and that "the district
maintained a policy to retaliate against anyone that crossed the
system." (R. Doc. 67-1, at 5, 19).  Plaintiff's claims are
completely unsupported.  She does not specify what protected
conduct she engaged in, when it occurred, or who retaliated
against her.  To the extent that plaintiff alleges that the
protected conduct was her complaints about the disciplining of
black children to Bankston, putting aside that plaintiff was the
disciplinarian, that activity is not protected by Section 1981 or
Title VII, and instead goes to the rights of the students, not
plaintiff.  Similarly, plaintiff's alleged complaints to Bankston
about the misrepresentations and lies that she claims white
teachers were circulating about her are also not protected
conduct as plaintiff has cited no evidence that shows these
complaints were based on her race.  Finally, even if plaintiff
could somehow show that she was engaged in protected activity,
she has not asserted any facts that link her activity with
Bankston's decision at the end of the school year to return her
to the classroom, or any unsuccessful effort by her to be hired
for Bankston's position.  Indeed, there is no evidence at all
regarding her applying for Bankston's position.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment.

New Orleans, Louisiana, this  2nd  day of November, 2006.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT COURT